DYCUS v. COMMONWEALTH NAT. BANK OF DALLAS et al.

(Court of Civil Appeals of Texas. Dallas. May 18, 1912.)

1. BANKS AND BANKING (§ 143*)—DEPOSITS —NONPAYMENT.

In a suit against a bank for the wrongful dishonor of his check, a depositor makes out a prima facie case when he shows funds on deposit sufficient to pay the check but for a particular charge to his account; the burden being on the bank to establish the rightfulness of the charge in question.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 414, 517; Dec. Dig. § 143.*]

2. BANKS AND BANKING (§ 148*)—DEPOSITS —DISHONOR OF CHECK—RIGHT OF ACTION.

A depositor on making a loan evidenced by a note as security took a vendor's lien note on property worth four times the amount of the loan. He then drew his check in favor of the borrower and gave it to the purported agent, who negotiated the loan, though he was never authorized by the alleged borrower. The alleged agent forged the name of the payee of the check, and it was cashed. *Held*, that the depositor having acquired the property given as security by means of foreclosure for more than the amount of the check, he could not recover against the bank, which had paid the check on faith of the forged indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

Error from Dallas County Court; W. F. Whitehurst, Judge.

Action by N. D. Dycus against the Commonwealth National Bank of Dallas, in which the American Exchange National Bank was made a party defendant. There was a judgment for defendants, and plaintiff brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error. T. L. Camp and Coke, Miller & Coke, all of Dallas, for defendants in error.

RAINEY, C. J. The statement of the nature and result of the suit is taken from the briefs of the parties.

This suit was brought by N. D. Dycus to recover from the Commonwealth National Bank of Dallas damages for breach of contract with him as a depositor in dishonoring on December 16, 1909, a check for $500 duly drawn and indorsed by him, payable to himself, and duly presented by himself at the bank.

The defense consisted of a general demurrer, general denial, and of a special answer, pleading and averring, among other things, that one Joseph Weil, purporting to act as agent for one H. Danielson, applied to the plaintiff in error for a loan of $500, and as security therefor gave him a note, signed by H. Danielson, for $550, secured by a collateral note of $1,000, being a vendor's lien on lot 21, in block B of Sanger Bros. Loan & Savings Association's addition to the city of Dallas, also secured by deed of trust on said lot, and that the plaintiff in error thereupon delivered to said Weil his check for $500 in favor of H. Danielson on the defendant in error Commonwealth National Bank, and that the said Weil forged the name of the payee upon said check and obtained from said bank the proceeds thereof, and that the plaintiff in error still owns and claims the $550 note and the collaterals attached thereto, and had foreclosed the same and obtained the title and possession of said lot, and had collected rents therefrom, and that, under these circumstances, the defendants in error are entitled to be subrogated to whatever properties or securities the said Weil may have delivered to the said plaintiff in error for said $500, and that the said plaintiff in error, having realized thereon sufficient to liquidate his said $500, has not been damaged, and is therefore not entitled to recover against the defendants in error.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The Commonwealth National Bank made the American Exchange National Bank a party defendant, and, in the event of a recovery by the plaintiff, sought a judgment over against it. The plaintiff and the defendants requested peremptory instructions in their favor, respectively. The court granted the request of the defendants, and refused that of the plaintiff. A verdict was returned in favor of the defendants accordingly, and from the judgment rendered thereon the plaintiff has prosecuted this writ of error.

The evidence shows that on August 30, 1909, Dycus had on deposit with the defendant in error a sum exceeding $500, and on that date defendant in error paid to one Joseph Weil a check drawn by Dycus and payable to H. Danielson or order for $500. The back of same bore the following indorsement:

"H. Danielson

"Jos. Weil

"Receiver No. 8

"1 Dallas Clearing House

"Aug. 31, 1909.

"American Exchange National Bank, Dallas, Texas, Nathan Adams C."

The check was handed by the plaintiff to Joseph Weil, as agent, for delivery to H. Danielson. It was not so delivered. It was presented by Joseph Weil to the American Exchange National Bank of Dallas, bearing the indorsement "H. Danielson," followed by Weil's own indorsement on August 31, 1909, and was credited to his account. It was then presented through the clearing house, or by special messenger, to the Commonwealth National Bank of Dallas, and its amount collected therefrom. By whom the indorsement "H. Danielson" was written was not shown. Joseph Weil left Dallas for parts unknown shortly after the occurrence, and his testimony was unavailable. Danielson knew nothing of the transaction, never indorsed the check, nor received any of the proceeds.

Joseph Weil, purporting to be the agent of H. Danielson, approached Dycus, and told him he had a party who wanted to borrow some money badly, and inquired whether the plaintiff had any money to loan. He said that the party needed $500, and was willing to pay a good rate of interest and a premium. He said that the party was H. Danielson, who had formerly worked in Sanger Bros.' shoe department, and was then living at Houston. The plaintiff in error asked about the security, and was told that Mr. Danielson offered a vendor's lien note of $1,000 on property in South Dallas worth probably $1,500 or $2,000. The plaintiff in error went with Mr. Weil to inspect the property, and, after inspection, agreed to make the loan if the title was good. An abstract of the title was presented to the plaintiff in error's attorneys for examination, and from its showing the title was pronounced to be good, and thereupon a note purporting to be signed by H. Danielson in favor of the plaintiff in error and a vendor's lien note, purporting to be executed by J. R. Hill to A. T. Howell, and purporting to be indorsed in blank by A. T. Howell, A. Rice and H. Danielson, and a pledge agreement purporting to be signed by H. Danielson, pledging this last-mentioned note to the plaintiff in error as security for the first, were delivered to the plaintiff in error by Mr. Weil, and the plaintiff in error executed and delivered to Mr. Weil, as agent, the check of August 30, 1909, for $500 in favor of H. Danielson, the borrower. Neither A. T. Howell, the supposed seller of the property, nor J. R. Hill, the supposed purchaser thereof and the supposed maker of the note, nor A. Rice, the supposed transferee of the note, testified on the trial. Nor was there any evidence that A. T. Howell ever sold the property to any J. R. Hill; that any J. R. Hill ever purchased the same; that any J. R. Hill ever executed the purported vendor's lien note in question; that A. T. Howell ever executed a transfer of any such note to any A. Rice; or that any A. Rice ever purchased the same, or ever executed a transfer thereof to H. Danielson.

A purported conveyance by Howell to Hill, the purported note by Hill to Howell, a purported deed of trust by Hill to Murphy, trustee, securing the same, a purported transfer of the note by Howell to Rice, and a purported transfer by Rice to Danielson were offered, but the execution of none of the documents was shown, and they were all objected to for that reason. The purported transfer from Howell to Rice supposedly was acknowledged before G. H. Irish, notary public, Dallas, Tex. Mr. Irish testified that he took no such acknowledgment. A. T. Howell really conveyed the property in question to Joseph Weil subsequent to the date of the purported deed from Howell to Hill, the purported transfer from Howell to Rice, and the purported transfer by Rice to Danielson of the note. The deed, however, was not filed for record until October 16, 1909, some time after the plaintiff's transaction with Weil as agent for H. Danielson. In consideration of said $500 check, besides $1,000 vendor's lien note, plaintiff in error received from Weil a note for $550, signed H. Danielson; the extra $50 being a premium for making the loan.

On December 16, 1909, plaintiff in error drew his check on the Commonwealth National Bank for $500, and payment was refused. On March 7, 1910, plaintiff in error sold the $550 note at public outcry and bid it in for $50, and credited it on the back of the note. The $1,000 note was secured by a trust deed on a certain house and lot in the city of Dallas worth $2,000. The trustee refused to act, and plaintiff in error appointed a substitute trustee, who sold the prop-

erty at public auction, and same was bid in by plaintiff in error for $500, who took possession of same and leased it for $10 per month, which rent he had received up to the trial. Plaintiff in error testified: "An attempt has been made to dispossess me of the property. I got notice to vacate the premises from Hy Lively, who, I believe, filed suit for the possession of the property, and the suit is pending."

[1] ·Plaintiff in error contends that, "in a suit against a bank for the wrongful dishonor of his check, a depositor makes out a prima facie case when he shows funds on deposit sufficient to pay the check but for a particular charge to his account; and the burden is on the bank to establish the rightfulness of the charge in question." This contention is correct and the plaintiff in error, under the evidence adduced by him, would be entitled to judgment unless the evidence adduced by the defendant in error defeats a recovery.

[2] The evidence plainly shows that the indorsement of H. Danielson was placed on the note by one who had no authority so to do, and without the knowledge or consent of Danielson. The note was cashed by the bank without notice of the forgery of Danielson's name, and on the faith that said indorsement was in every respect regular. Plaintiff in error is entitled to compensation for such loss as he may have sustained by reason of such wrongful payment by the bank. But has he sustained any loss by reason of such wrongful payment? We think not. He executed his check for $500, and received in consideration a note for $550 and collateral securities, and he has collected about $120, and holds property worth $2,000. He claims that he has been sued for the property, but the evidence fails to show that he has not good title to it. He claims that he has been at some expense in collecting and preserving what he has received from the collaterals, but he does not show what it amounts to. According to plaintiff in error's own testimony, the house and lot he received were worth $2,000. As far as shown by the evidence, he has more than been recompensed for the amount of the check. Equity will prevent his recovering from the bank any more than the loss he has sustained. He is not entitled to recover from the bank, and also from the collaterals received by virtue of the transaction with Weil. He, however, is seeking to do both. He is holding on to the securities, and also seeking to recover from the bank.

He insists, however, that the bank is not in privity with the transaction by which he came into possession of the collateral securities. This bank innocently paid his check by which he was enabled to hold and profit by the transaction, and we are of the opinion that to entitle him to recover in this suit he should have surrendered to the bank the collaterals or the proceeds received by him therefrom. Counsel have presented no authority from this state bearing upon this point, nor have we found any, but the case of Andrews v. Bank, 107 Minn. 196, 117 N. W. 621, 780, 122 N. W. 499, 25 L. R. A. (N. S.) 996, cited by defendant in error, states the true doctrine, and is, we believe, applicable to the facts of this case.

Believing the plaintiff in error has not sustained loss and that the justice of the case has been reached, the judgment will be affirmed.

Affirmed.