FEDERAL LAND BANK OF OMAHA ET AL., APPELLANTS, V.
OMAHA NATIONAL BANK, APPELLEE.

FILED MAY 25, 1929, NO. 26526.

*Smith, Schall, Wright & Sheehan, F. H. Gaines* and *E. F.
Dougherty,* for appellants.

*Rose, Wells, Martin & Lane* and *Edgar M. Morsman, Jr.,*
and *Brogan, Ellick & Raymond, contra.*

Heard before GOSS, C. J., GOOD, THOMPSON and EBERLY,
JJ., and BLACKLEDGE and REDICK, District Judges.

EBERLY, J.

This is an action at law by the Federal Land Bank of
Omaha and the New Amsterdam Casualty Company, plain-
tiffs, against the Omaha National Bank of Omaha, as de-
fendant. Plaintiffs' petition sets forth eight causes of action
aggregating $46,620. It alleges that from time to time it
deposited in due course of business with the defendant cer-
tain sums of money; that the checks in the amounts set
forth in the petition were drawn upon said depository by
the Federal Land Bank, each payable to the order of two
persons, viz., "another" and "N. C. Klein, Sec.-Treas.;"

that each of these checks was in the course of business presented to and paid by the defendant; that none of the checks were indorsed by the joint payees named, save and except in each case N. C. Klein had without authority of either of the plaintiffs, the Federal Land Bank of Omaha or his copayee, indorsed the latter's name in addition to his own on each instrument involved, and that the indorsement by N. C. Klein of his copayee's name constituted a forgery thereof; that the defendant bank had charged the deposit account of plaintiffs with the checks thus paid and refused to reimburse plaintiffs for the same.

The defendant in its answer admits the making of the deposit (by the plaintiff, the payment of the checks in suit and charging the same against such deposit, and denies generally the allegations of the petition, and in addition thereto sets forth four additional defenses, in one of which, by apt language, it was in substance alleged that it was the intention of all parties to the transaction, as well as a duty enjoined by law, that said N. C. Klein, as secretary-treasurer of the Sisseton National Farm Loan Association, should collect each of said checks and deposit the proceeds thereof in the Guaranty State Bank of Sisseton, South Dakota, duly designated in the proper manner by Sisseton National Farm Loan Association as the legal depository of such funds pending their distribution to the parties entitled thereto; and that such deposit was in each of the cases set forth in plaintiffs' petition duly made by said N. C. Klein, as secretary-treasurer of said Sisseton National Farm Loan Association, in the manner required by law.

To this answer the plaintiffs filed a general denial. There was a trial to the court, a jury being waived, and judgment for the defendant, and from an order denying a motion for a new trial plaintiffs appeal.

This lawsuit arises out of business transacted under the provisions of the federal farm loan act. This act appears in the United States Code Annotated as chapters 7 and 8 of title 12 and embraces section 641 to section 1129 in-

clusive. This act and its various amendments create three separate agencies: (1) The Federal Farm Loan Board consisting of seven members, at the head of which *ex officio* is the secretary of the treasury of the United States, and which is given a general supervision over the administration of the act; (2) the Federal Land Banks (of which the plaintiff is one) which are separate and independent corporations obtaining their charter from the Federal Farm Loan Board and having such powers only as are granted by the act. They report to the Federal Farm Loan Board and are at all times subject to its supervision and regulation; (3) the National Farm Loan Associations which are authorized to be created by ten or more persons who own farm lands qualified for loans under the act. The application for a charter, as a National Farm Loan Association, which, as appears from its nature, is purely a local association, is sent to the Federal Land Bank in that district, in which the association attempts to be organized, and is by it forwarded to the Federal Farm Loan Board with its recommendation. If granted, this board issues a charter to the association, which becomes, under the act, a separate corporation with the powers enumerated in the act, and subject to the limitations and restrictions prescribed therein.

Section 720 provides as follows: "Upon receipt of its charter such national farm loan association shall be authorized and empowered to receive from the Federal Land Bank of the district sums to be loaned to its members under the terms and conditions of this chapter."

It may be said that the principal function of these local associations is to receive and approve applications from owners qualified for loans, which applications are thereupon forwarded to the Federal Land Bank of its district, which, upon due acceptance and approval, furnishes the funds to complete the loan.

Applicants for farm loans are required to be members of the association and subscribers to its capital stock. Each association elects its own board of directors; each

member or borrower of a farm loan having a voice in the selection. This board of directors in turn chooses the officers of the company, including a secretary-treasurer, who is the only paid officer of this corporation. His compensation is determined by the board of directors and he is paid from the funds of the association.

Section 741 provides: "Any person whose application for membership is accepted by a national farm loan association shall be entitled to borrow money on farm land mortgage upon filing his application in accordance with section 733 and otherwise complying with the terms of this chapter whenever the Federal Land Bank of the district has funds available for that purpose, unless said land bank or the Federal Farm Loan Board shall, in its discretion, otherwise determine."

Section 761 of this chapter provides: "Every national farm loan association shall have power:

"First. * * * To indorse, and thereby become liable for the payment of, mortgages taken from its shareholders by the Federal Land Bank of its district.

"Second. * * * To receive from the Federal Land Bank of its district funds advanced by said land bank, and to deliver said funds to its shareholders on receipt of first mortgages qualified under section 771 of this chapter."

Another requirement of this act is (section 772): "Funds transmitted to farm loan associations by Federal Land Banks to lbe loaned to its members shall be in current funds, or farm loan bonds, at the option of the borrower."

Section 714 of this act provides: "It shall be the duty of the secretary-treasurer of every national farm loan association to act as custodian of its funds and to deposit the same in such bank as the board of directors may designate, *to pay over to borrowers all sums received for their account from the Federal Land Bank upon first mortgage as in this chapter prescribed,* and to meet all other obligations of the association, subject to the orders of the board of directors and in accordance with the by-laws of the association. It shall be the duty of the secretary-treasurer, acting under

the direction of the national farm loan association, to collect, receipt for, and transmit to the Federal Land Bank payments of interest, amortization instalments, or principal arising out of loans made through the association. He shall be the custodian of the securities, records, papers, certificates of stock, and all documents relating to or bearing upon the conduct of the affairs of the association." (Italics ours.)

It is an admitted fact in the record that N. C. Klein was duly elected and qualified as secretary-treasurer of the Sisseton National Farm Loan Association, and that he, duly qualified, was acting as such during the period covered by the transactions in suit; that the Guaranty State Bank of Sisseton, South Dakota, had been duly designated by the directors of the Sisseton National Farm Loan Association as its depository in which all of its funds and all funds received by it were required to be deposited, and that the state bank last named was such legal depository at the time all the transactions were had, and that each of the checks which are in suit represent proceeds of loans made to members of his association and through it had been received by N. C. Klein, secretary-treasurer, and had been by him duly deposited in the Guaranty State Bank of Sisseton, in strict accordance with the directions of such board of directors, the only iregularity being that he had failed in each case to obtain the indorsement of the person with whom, in each instrument, he was named as copayee.

It thus appears that whatever misappropriation of funds may have been made it was made after the deposit had been completed, as directed by the board of directors of the local association, and that the association, either in its own name, or in the name of "N. C. Klein, as secretary-treasurer," had been duly credited with such deposit on the books of the Guaranty State Bank of Sisseton.

The provisions of the statutes quoted fairly disclose the legislative intent to be that, when farm loans were made, funds arising therefrom should be transmitted by the Federal Land Banks to their several farm associations and to

be by the latter disbursed to the members making the loans.

Indeed, section 772 appears to make this duty mandatory to transmit such funds in "current funds" or farm loan bonds. It thus must be conceded that when the deposit was made in the bank to the credit of "N. C. Klein, secretary-treasurer" of the Sisseton National Farm Loan Association, the course of business intended by those participating therein and contemplated by the terms of the statute had been duly completed, the only irregularity appearing being that the mortgagor making the loan had not subscribed his name as an indorsement on the instrument which transmitted the "current funds," as insisted on by the plaintiffs. Under these circumstances the rule appears to be: "As a bank is authorized to pay only to the person designated by the depositor, it cannot charge against the depositor's account an amount paid by it on a forged indorsement of the depositor's check, unless such payment is properly attributable to the negligence or other fault of the depositor, or unless the money has actually reached the person whom the drawer intended should receive it, or the drawer himself." 7 C. J. 686, sec. 414.

So far as the present transactions are concerned, it must be conceded that the terms in which the legislative intent is expressed, as well as the acts of the parties, and the established course of business disclosed by the record, indicate the person the drawer of these checks in controversy actually intended to receive the money was "N. C. Klein, as secretary-treasurer," representing the Sisseton National Farm Loan Association, to be by him distributed as directed. That was the plain purpose of all concerned. It cannot be gainsaid but that these funds and the proceeds of each check in suit actually came into possession of the Sisseton National Farm Loan Association through the act of its secretary-treasurer in the exercise of the powers of his office, and was by him deposited in the depository duly designated as such in the manner contemplated by the act.

It follows therefore that the amounts covered by the check having actually reached the persons whom the drawer

intended should receive them, notwithstanding the irregularity in failing to obtain the indorsement of the copayee therein named, may not be recovered by the plaintiffs herein. *Bayley v. Hamburg,* 106 Wash. 177; *Andrews v. Northwestern Nat. Bank,* 107 Minn. 196; *Beeson-Moore Stave Co. v. Clark County Bank,* 160 Ark. 385; *Union Bank & Trust Co. v. Lynn,* 73 Mont. 473; *McKaughan v. Merchants Bank & Trust Co.,* 182 N. Car. 543; *Phœnix Nat. Bank v. Taylor,* 113 Ky. 61; *Hunt v. Listenberger,* 14 Ind. App. 320; *Hoffman v. American Exchange Nat. Bank,* 2 Neb. (Unof.) 217.

The decision of this question practically disposes of the issues presented herein. This opinion will not, therefore, discuss, determine or decide the validity of the other defenses set forth in the defendant's answer, nor consider the question of whether they are supported by the evidence.

It follows that the judgment of the district court in the instant case was correct, and it is

AFFIRMED.

Note—See 3 R. C. L. 542; 1 R. C. L. Supp. 849; 4 R. C. L. Supp. 198; 5 R. C. L. Supp. 181; 7 C. J. 669 n. 39, 677 n. 28, 686 n. 94, 687 n. 96.