Modern Equipment Corporation, Appellant, v. Northern Trust Company, Appellee.

Gen. No. 38,223.

Opin-
ion filed April 7, 1936.

JOHN A. BROWN, of Chicago, for appellant.

CASTLE, WILLIAMS & MCCARTHY, of Chicago, for appellee; FRANZ W. CASTLE, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this appeal plaintiff, Modern Equipment Corporation, seeks to reverse a judgment for costs entered against it in favor of defendant, Northern Trust Company, in an action tried by the court without a jury. One C. E. Gordon was president and treasurer and the only active officer of plaintiff corporation during the period from April 4, 1931, to July 7, 1933, when the checks upon which this action was brought were drawn and paid.

Plaintiff's statement of claim alleged substantially that it was a depositor in defendant bank; that it drew 55 checks to the order of C. E. Gordon; that said checks were charged against plaintiff's account by said bank and returned to plaintiff without the indorsement of the payee thereon; that plaintiff demanded from defendant the aggregate amount of such checks; that the bank refused to repay said money; and that plaintiff was thereby damaged $4,833.90, the total amount of such checks, plus interest on the respective checks from the date each was charged to plaintiff's account.

Defendant's affidavit of merits, after admitting the allegations of fact in the statement of claim, averred that all the checks were in the possession of the payee after they were drawn; that they were all delivered by the payee to his wife, who deposited all but four of them in a joint account which she and her husband maintained at the Austin State Bank, and that two of them were cashed by her over the counter of that bank; that the other two checks were either cashed or used in the payment of bills or making purchases by Gordon's wife; that his wife had full authority from him to deposit or cash the checks; that the payee received the proceeds of all the checks; and that plaintiff suffered no damage.

The salient facts as they appeared from the evidence are that plaintiff by C. E. Gordon, as president, during the period from April 4, 1931, to July 7, 1933, drew 55 checks, aggregating $4,833.90 on defendant bank, payable to the order of C. E. Gordon; that Gordon and his wife had a joint checking account in the Austin State Bank, payable to the order of either of them; that Gordon turned the 55 checks over to his wife without indorsing them as payee; that the checks were in Gordon's possession from the time they were drawn until he turned them over to his wife; that he gave the checks to her and authorized her to deposit or cash them; that she indorsed all of them, either with her own or her husband's name; that she deposited 51 of the checks in the joint account of herself and her husband at the Austin State Bank and cashed two of them over the counter of that bank; that one of the checks for $50 was given by her in payment of their rent and one for $25 was indorsed by her to the Atlantic & Pacific Store, either in payment for groceries or for cash; and that all the checks were paid by defendant bank without the payee's indorsement and charged to plaintiff's account.

Notwithstanding Rule 39 of the Supreme Court, which provides that in an appellant's brief "the concluding subdivision of the statement of the case shall be a brief statement of the errors . . . relied upon for a reversal," plaintiff devoted seven pages of its 100-page brief to a prolix assignment of 33 errors, the first 15 of which are directed to the alleged error of the trial court in denying plaintiff's motion to strike defendant's affidavit of merits, and many others which are general in their nature. Defendant's affidavit of merits presented a meritorious legal defense and plaintiff's motion to strike same was properly denied.

Plaintiff's real contention is that, even though the payee named in the 55 checks received the proceeds of same, the defendant bank is liable to it as the drawer of the checks because the bank as drawee paid and charged them to plaintiff's account without the payee having indorsed them.

Defendant's theory is that it is not liable for paying the checks, although they did not bear the payee's indorsement, since the payee, C. E. Gordon, actually received the proceeds or the benefit of the proceeds of the checks and no damage could have been suffered by plaintiff in so far as the defendant bank was concerned in the transactions.

Thus, stripped of verbiage, the material issue presented for our determination is the question of law raised by the pleadings. Where the payee is shown to have received the proceeds of checks drawn to his order, can the drawer of the checks complain that the checks when returned to it did not bear the payee's indorsement and on that ground alone charge the drawee bank with the amount of the checks so paid?

No case in this State has been cited wherein this precise question has been decided, but reason and logic impel the conclusion that, if the person designated as payee in the checks and entitled to receive their pro-

ceeds actually does receive them or the benefit of them, the drawee bank has discharged its obligation to the drawer of the checks, which has suffered no loss, even though such checks were paid without the payee's indorsement. If the drawee bank paid checks without the indorsement of the payee and the payee did not receive their proceeds, an entirely different question would arise.

The general principle applicable to the question involved here as stated in 7 C. J., p. 679, par. 401, is as follows:

"Notwithstanding the universal custom of banks to require a payee to indorse a check before payment, the rule as declared by the courts is that the payee need not indorse the check in blank as a voucher for the payment."

In passing upon this question in *Osborn v. Gheen*, 16 D. C. Reports, p. 189 (5 Mackey), affirmed by the Supreme Court of the United States in 136 U. S. 646, the court said (p. 194):

"The Court was also entirely right in directing the allowance of check for $1,925, which was paid by the bank, although it was not endorsed by the payee. There is no necessity at all for the legal operation of the payment that the payee should endorse the paper. All that he has to do is to receive the money. The party to whom it is directed is ordered to pay so much money to him.

"All that the drawee has to do, therefore, is to satisfy himself that when the order is presented, the true and proper person is there at hand to receive the money and to receipt for it. It is true it is common for the payee to endorse in blank at the bank, or for the holder of the instrument to endorse in blank when he receives payment, as a voucher for the payment.

"But a voucher is not necessary nor is a receipt necessary to give validity to a payment. *The bank makes the payment, of course, at its peril, if the payee*

*shall afterwards challenge the payment and say the money was not paid to him but to someone else.* Then it is a mere question of identity as between the payee and the bank; but it does not go to the legal integrity of the instrument.

"The bank upon which the note or bill of exchange is drawn is authorized and required to pay the money to the payee, *knowing him to be the identical man indicated without any endorsement and without any receipt.*" (Italics ours.)

There are many authorities to the effect that even though a drawee bank pays a check on the forged indorsement of the payee named therein, and it is shown that the proceeds of the check or the benefit of such proceeds are received by either the payee or the drawer, no recovery can be had against the drawee bank by the drawer of the check. (*Federal Land Bank of Omaha v. Omaha National Bank,* 118 Neb. 489; *Andrews v. Northwestern Nat. Bank,* 107 Minn. 196; *Bayley v. Hamburg,* 106 Wash. 177; *Beeson-Moore Stave Co. v. Clark County Bank,* 160 Ark. 385.)

It is true that all these checks were drawn by plaintiff corporation, by C. E. Gordon, as president, to his own order individually, but the defendant bank is not charged with any dereliction of duty because of that fact or because it honored the checks so drawn. In fact, plaintiff's statement of claim averred that it "was the duty of said defendant, Northern Trust Company, to pay out the amounts of money specified in each of said checks to the payee in each of said checks named when said payee had properly endorsed each of said checks and surrendered the same to said defendant."

In view of the fact that the only issue raised by the pleadings in this cause was whether or not plaintiff was entitled to recover from defendant the amount of the checks in question because the drawee bank honored them without the payee's indorsement, the trial court properly excluded evidence offered by plaintiff to show

that Gordon had dealt dishonestly with plaintiff's funds and that a decree had been entered against him in the superior court in favor of plaintiff for wrongfully taking or appropriating money belonging to it, including that procured through some or all of these checks.

It is urged that the court erred in admitting in evidence records of the Austin State Bank showing the joint checking account of C. E. Gordon and his wife, the deposit therein of 51 of the checks, the payment in cash by that bank to Mrs. Gordon of two of the checks, Gordon's testimony that he delivered all the checks to his wife and authorized her to deposit or cash them, and Mrs. Gordon's testimony as to the delivery of them to her by her husband and her disposition of the checks. We think this evidence was competent and material to establish the drawee bank's defense that, regardless of the lack of the payee's indorsement on the checks, Gordon actually received their proceeds or the benefit of their proceeds.

Complaint is further made that though this evidence showed conclusively that the payee received the proceeds of the checks, it can be of no avail to defendant since it had no knowledge of such facts when it paid the checks without the payee's indorsement. This contention is without merit. The actual receipt of the proceeds of the checks by the payee is controlling rather than when the defendant bank received notice or knowledge that he received same.

Regardless of the equities that have existed or now exist in the relations between plaintiff, Modern Equipment Company, and C. E. Gordon, Gordon, in so far as the defendant, Northern Trust Company, is concerned, had authority to draw checks in the name and in behalf of plaintiff as its president, and the defendant bank as drawee was authorized to honor checks so drawn, even to the order of Gordon himself. Its pri-

mary duty and obligation was to see that the proceeds of the checks were paid to the named payee or to his order. While the defendant paid the checks at its peril without the payee's indorsement, its obligation to plaintiff was discharged when the payee designated and intended to receive the proceeds of the checks, actually did receive them. Whatever loss, if any, plaintiff may have suffered through the conduct of Gordon, no act of defendant has been shown to have contributed thereto.

It is idle to urge that the finding of the trial court was against the manifest weight of the evidence. The evidence as to the actual receipt of the proceeds of the 55 checks by Gordon, the payee, is not only uncontradicted, but is conclusive of the only issue in the case.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Affirmed.*

SCANLAN, P. J., and FRIEND, J., concur.